Filed 9/14/23  P. v. Taylor CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>DONTE TAYLOR et al.,<br><br>　　Defendants and Appellants. | H048959<br>(Santa Clara County<br>Super. Ct. No. B1794662) |

## I.  INTRODUCTION

A jury found defendants Donte Taylor and Meleesa Johnson[1] guilty of several offenses involving their sexual actions with a child, Johnson's daughter.  The jury convicted Taylor of two counts of sexual intercourse or sodomy with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (a); counts 1–2),[2] 16 counts of oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b); counts 3–18), and one count of possessing or controlling matter depicting a person under 18 years of age personally engaging in or simulating sexual conduct (§ 311.11, subd. (a); count 20).  Johnson was charged with and convicted of five of these same counts:  four

---

[1] Johnson's first name is frequently referred to in the record as "Mellisa."  The trial court verified near the end of the trial that Johnson's first name is correctly spelled "Meleesa."

[2] All statutory references are to the Penal Code unless otherwise indicated.

counts of oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b); counts 15–18) and one count of possessing or controlling matter depicting a person under 18 years of age personally engaging in or simulating sexual conduct (§ 311.11, subd. (a); count 20).[3] The trial court sentenced Taylor to 290 years to life in prison consecutive to a three-year determinate term, and Johnson to 60 years to life in prison consecutive to a three-year determinate term.

On appeal, Taylor contends that: (1) the trial court abused its discretion in admitting evidence of child sexual abuse accommodation syndrome (CSAAS); (2) the trial court erred by using CALCRIM No. 1193 to instruct the jury regarding the permissible and impermissible uses of CSAAS evidence; (3) his sentence amounts to cruel and/or unusual punishment in violation of the United States and California Constitutions; (4) his case must be remanded for resentencing because the court failed to pronounce a sentence for count 18; (5) the trial court should be directed to strike a $129.75 criminal justice administration fee imposed against him; and (6) the abstract of judgment must be corrected to specify the punishment for certain counts and to reflect that the trial court stayed the imposed fines and fees. Johnson joins in Taylor's arguments regarding CSAAS evidence, the CSAAS instruction, and the criminal justice administration fee. Johnson also separately contends that: (1) the trial court erred under section 654 by imposing separate punishment for each of counts 15 through 18; and (2) her case should be remanded for resentencing on count 20 under recent changes to section 1170.

For reasons that we will explain, we reject the assertions of error regarding the CSAAS evidence and CSAAS instruction, the argument that the trial court erred under

---

[3] After the close of evidence, the trial court granted the prosecution's motion to dismiss one count of employing, persuading, or inducing a minor's involvement in modeling, posing, or performing sexual conduct, a count that had been charged against both defendants (§ 311.4, subd. (c); count 19).

2

section 654 regarding Johnson's sentence, and Johnson's assertion that her case should be remanded for resentencing on count 20. For both defendants, we order the portion of the criminal justice administration fee that remained unpaid as of July 1, 2021 to be vacated. As amended, we will affirm the judgment for Johnson. Regarding Taylor, we will reverse the judgment and remand the matter for resentencing due to the lack of an oral pronouncement of the sentence on count 18. We will order the trial court to ensure that the new abstract of judgment accurately and completely reflects the oral pronouncement of judgment upon resentencing, including the sentence for each count and any fines and fees imposed.

## II. BACKGROUND

Johnson was the mother of a girl who was about nine years old at the time of the charged acts. Defendants Johnson and Taylor were romantically involved with each other, and they lived with Johnson's daughter and others in Johnson's father's home. Johnson's father was often absent from the home due to work.

During a dispute in the home on October 28, 2017, defendants struck Johnson's father, injuring him. Defendants left and then tried to re-enter the home, but Johnson's father would not let defendants back in and told them he would call the police, so defendants left. The next morning, Johnson's father found defendants in the house, so he called the police. Defendants left the house, leaving Johnson's daughter behind. As Johnson's father was on the phone with police, Johnson's daughter approached him and said she had to tell him something. Johnson's father told the girl to wait and tell the police what she had to say when the police arrived.

When the police arrived, Johnson's daughter reported that defendants had sexually abused her. She retold her account of sexual abuse by defendants to police officers again that same day, and then again to one of the same police officers a few days later. She reported that Taylor had engaged in various sexual actions with her, including coming into the bathroom "every single time" she took a shower to commit sexual actions with

3

her. She stated that she kept a tally on paper of the number of times Taylor engaged in some form of sexual activity with her as she came out of the shower, and that this tally reached 62 times, though she had discarded the paper before she made her report to police. She also stated that Taylor vaginally penetrated her with his penis more than one time and up to 20 times, though she also stated that "[m]ost of the times were, like, attempts." She reported that Taylor made her engage in various sexual activities, and that if she refused, he would "force" her to do so. The girl stated that at one point, Taylor told her if she did not perform a sexual act, he would hurt her mother.

Johnson's daughter reported that Johnson was aware of Taylor's actions and was "happy" and "smiling" when Taylor would commit these actions. The girl reported that at one point, both defendants engaged in various sexual acts with her that they captured on video and in photographs. The girl reported that she fell asleep after various sexual activity occurred in the home between her, Johnson, and Taylor, and that defendants then awoke her to engage in more photographed sexual activity with them. The girl reported that Johnson told her that engaging in this sexual activity was "totally normal." She also reported that on occasions Johnson would tell her to come "have fun" with her and Taylor, meaning engaging in sexual activity, and that on one such occasion, defendants took her to a hotel room that she thought was in San Francisco where they both engaged in sexual activity with her. The girl reported that when she told Johnson she did not want to engage in this activity, Johnson took her phone away and grounded her.

The same day that Johnson's daughter reported defendants' actions to police, police stopped the minivan defendants were driving, obtained a search warrant, and found four cell phones in the vehicle. A search of Taylor's cell phone found five videos and six photographs of Johnson's daughter engaged in sexual activity with defendants. An analysis of data from the videos and photographs showed they were taken a few months earlier on either June 10, 2017, or July 2, 2017 at the home of Johnson's father. A different phone taken from Johnson's purse also contained photographs of the girl

4

engaged in sexual activity, some of which were the same photographs as those found on Taylor's phone and some of which were different.

At trial, the prosecution called Johnson's father, Johnson's daughter, and three police officers to testify. The prosecution also called Dr. Anna Washington, a psychologist who was recognized as an expert in CSAAS. Before Dr. Washington's testimony, the trial court read CALCRIM instruction No. 303, instructing the jury: "During the trial certain evidence is admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." The trial court also instructed the jury in accordance with CALCRIM No. 1193 as follows: "You will hear testimony from Anna Washington regarding child sexual abuse accommodation syndrome. Anna Washington's testimony about child sexual abuse accommodation syndrome is not evidence that the defendants committed any of the crimes charged against them. [¶] You may consider this evidence only in deciding whether or not [Johnson's daughter's] conduct was not inconsistent with the conduct of someone who had been molested and in evaluating the believability of her testimony." The trial court later noted that the prosecutor and counsel for both defendants requested that the trial court provide CALCRIM No. 1193 before Dr. Washington's testimony; defense counsel did not dispute this.

Dr. Washington testified that she was not familiar with the facts of the instant case and that she had conducted no interviews regarding this case. She testified that CSAAS is made up of five categories that are intended to "dispel some different myths about child sexual abuse": secrecy; helplessness; entrapment and accommodation; delayed, conflicted, and unconvincing disclosure; and retraction. She acknowledged that "all children might have varied reactions to child sexual abuse," and thus "some of the categories might not apply to all children." She stressed that CSAAS "should not be used to diagnose[ ] a child with any particular disorder" and "it shouldn't be used to determine whether or not a particular defendant is guilty or not, for example." Dr. Washington

5

testified that CSAAS does not determine whether abuse occurred, but rather helps "dispel or challenge" "common myths about child sexual abuse." She then testified about four of the five CSAAS categories (secrecy, helplessness, entrapment and accommodation, and delayed, conflicted, and unconvincing disclosure), and why a victim of child sexual abuse might engage in behavior in these areas that some people might find counterintuitive.[4] Dr. Washington also recognized that "victims of child sexual abuse respond in various ways depending on individual characteristics and circumstances of the sexual abuse."

Neither defendant testified, called any witnesses, or presented any evidence. In the trial court's instructions to the jury following closing arguments, the court repeated CALCRIM Nos. 303 and 1193.

## III. DISCUSSION

### A. *CSAAS Evidence – Both Defendants*

Defendants contend that the trial court abused its discretion in admitting CSAAS evidence through Dr. Washington's testimony.

Prior to trial, defendants moved in limine to exclude CSAAS expert testimony. Defendants' motion recognized that "[c]ase law thus far has examined CSAAS and admitted it for the limited purpose of rehabilitation of persons as a class." The defense motion asserted that this use has been permitted because of "the unexamined assumption that CSAAS evidence is a reliable reflection of how children, as a class, respond when faced with attempting to communicate the fact of abuse to a disbelieving world of adults." The motion stated that the defense "challenges this basic assumption that this evidence is reliable," because "the subject of expert testimony must be reliable evidence and free from speculation even when it is not evidence of a scientific nature. CSAAS does not meet these criteria." As a result, the defense moved the trial court to exclude

---

[4] The prosecution did not seek to have Dr. Washington testify about the fifth CSAAS category, retraction, as the evidence did not indicate that Johnson's daughter sought to retract the allegations.

6

any expert testimony regarding CSAAS for any purpose, or alternatively to exclude any testimony "that CSAAS factors show that a sexual molestation actually occurred, the complaining witnesses were victims of sexual molestation, that the complaining witnesses are credible or telling the truth, or any other testimony suggesting children who make accusations of child abuse should be believed." The defense also moved the trial court to require the prosecution to make an offer of proof identifying any myths it intended CSAAS testimony to dispel, to limit CSAAS testimony to dispelling such myths, to instruct the jury "regarding the limited purpose and use to which the expert testimony of CSAAS can be used," and to conduct a hearing pursuant to Evidence Code section 402 at which the prosecution would be required to lay the foundation for the reliability of CSAAS evidence and to lay the foundation for the qualifications of any expert witness on the subject.

The prosecution moved in limine to allow CSAAS evidence through an expert witness, asserting that because Johnson's daughter did not disclose the abuse immediately, "[a] CSAAS expert can explain delayed disclosures, incremental disclosures, and children's memory as it relates to sexual events." In addition, the prosecution opposed the defense's motion to exclude CSAAS expert testimony, asserting that the prosecution anticipated the defense would challenge the girl's credibility because she "delayed reporting and gave inconsistent statements," and thus CSAAS evidence should be permitted "to explain such conduct."

During trial, but prior to Dr. Washington's testimony and after Johnson's daughter's testimony, the trial court heard argument on the matter out of the presence of the jury and ruled that Dr. Washington could testify about CSAAS. The trial court ruled: "Ultimately, whenever any witness is on the stand -- and that also applies to currently an 11-year-old witness -- their credibility is a factor in the consideration by the jury. Whether counsel argue one way or the other, what a witness says on the stand is up to the jury whether it is to believe all, part, of none of it." The court stated that it was "clear"

7

that Johnson's daughter's testimony was going to be "challenged" and "questioned," and that in light of case law stating that CSAAS evidence is generally admissible, "such an expert is appropriate and relevant." The trial court also stated: "[T]here was a delay in reporting of the incidents. There was concealment. There are allegations that there are conflicts in her testimony. [¶] And this expert as proffered would provide information in opinion as to victims as a class and not to any particular victim." The trial court thus ruled that Dr. Washington could testify as to the first four CSAAS categories, noting that it would provide CALCRIM No. 1193 to the jury.

On appeal, defendants contend that their state and federal constitutional rights to due process were violated by the admission of CSAAS evidence because the evidence allowed the jury to make the "unreasonable inference" that because Johnson's daughter "acted in ways that children who have been molested act, as described by Dr. Washington, she was a credible witness, despite evidence to the contrary." They contend that CSAAS evidence should be inadmissible as unreliable because it "always supports a conclusion that the abuse actually occurred." To the extent that defendants' trial counsel failed to articulate their objection to this evidence in a way that preserves this issue for appeal, they assert that they were deprived of their right to effective assistance of counsel.

### 1. Legal Principles and Standard of Review

Expert opinion testimony is admissible when the subject matter is "beyond common experience," and the opinion would assist the jury. (Evid. Code, § 801, subd. (a).) " 'When expert opinion is offered, much must be left to the trial court's discretion.' [Citation.] The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion. [Citations.]" (*People v. McDowell* (2012) 54 Cal.4th 395, 426 (*McDowell*).)

"Trial courts may admit CSAAS evidence to disabuse jurors of five commonly held 'myths' or misconceptions about child sexual abuse. [Citation.] While CSAAS

8

evidence is not relevant to prove the alleged sexual abuse occurred, it is well established in California law CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse. [Citations.]" (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*).) CSAAS evidence "is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394.) "For instance, where a child delays a significant period of time before reporting an incident or pattern of abuse, an expert could testify that such delayed reporting is not inconsistent with the secretive environment often created by an abuser who occupies a position of trust." (*Ibid.*) CSAAS evidence "is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301, fn. omitted (*McAlpin*).)

### 2. Analysis

The trial court determined that Dr. Washington's CSAAS testimony was relevant because Johnson's daughter's credibility was placed at issue. Defendants do not specifically challenge the trial court's ruling in this regard, and we find no abuse of discretion in this ruling. Defendants sought to establish through their cross-examination and in argument that Johnson's daughter's testimony contained "contradictions and inconsistencies," focusing on a lack of detail about the instances she reported, the presence of other people in the house, the lack of corroborating witnesses, and asserted contradictions in her accounts about the incident in the hotel. Johnson's daughter also

9

testified that she still loved her mother, and during trial she provided a card to be given to her mother. Dr. Washington's testimony provided relevant information to the jury in deciding whether the girl's conduct was inconsistent with the conduct of someone who had been molested. For example, Dr. Washington testified about how the normalizing behavior of perpetrators of child sexual abuse facilitates secrecy, how victims of child sexual abuse might react to feeling stuck or entrapped in the relationship with their abusers, and, in particular, how people might have a misconception "that children will share all the details right away and that those details will be shared in a consistent manner," whereas in reality, "children might share little bits and pieces of information over time and also that some of that information is incomplete or inconsistent as well." Therefore, the trial court did not abuse its discretion in concluding that the testimony involved a matter "beyond common experience" that would assist the jury. (Evid. Code, § 801, subd. (a).)

Beyond the relevance of the testimony in this particular case, defendants assert that CSAAS evidence should be generally inadmissible because it is unreliable and because, by its very nature, CSAAS evidence will always support the conclusion that abuse actually occurred because it suggests that both intuitive and counterintuitive behavior support an alleged victim's credibility. They assert that while "California has accepted the admissibility of CSAAS evidence, courts have acknowledged the inherent problems with such evidence," citing cases largely from other jurisdictions. Defendants acknowledge that in *McAlpin*, the California Supreme Court held that CSAAS evidence could assist jurors by dispelling common misperceptions about victim behavior, and that this court is bound by the decisions of our Supreme Court. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1302.) However, defendants argue that *McAlpin* is "no longer an accurate reflection of current understandings of how children respond to abuse," and that recent decisions from Courts of Appeal applying *McAlpin* were wrongly decided. Defendants assert that jurors are no longer likely to hold the misconceptions that CSAAS evidence

10

addresses, and that the admission of CSAAS evidence deprived them of due process by permitting the jury to infer that Johnson's daughter was a credible witness.

Our Supreme Court held in *McAlpin* that CSAAS expert testimony is admissible to disabuse jurors of commonly held misconceptions about child sexual abuse and to explain seemingly contradictory behavior of a child sexual abuse victim. (*McAlpin*, *supra*, 53 Cal.3d at p. 1301.) The California Supreme Court's decisions are binding on all lower courts in this state. (*People v. Johnson* (2012) 53 Cal.4th 519, 528.) "CSAAS evidence has been admitted by the courts of this state since the 1991 *McAlpin* decision." (*People v. Munch* (2020) 52 Cal.App.5th 464, 468 (*Munch*).) "Further, reviewing courts have routinely held the admission of CSAAS evidence does not violate due process. [Citations.]" (*Lapenias*, *supra*, 67 Cal.App.5th at p. 174.) Defendants' references to decisions from other jurisdictions that reached a different outcome do not affect the binding nature of the *McAlpin* decision. The *McAlpin* decision "is binding on all lower courts in this state. [Citation.] That other jurisdictions may disagree with it does not change its impact on California cases. [Citation.]" (*Munch*, *supra*, at p. 468.) Accordingly, we adhere to precedent from our Supreme Court that CSAAS evidence is generally admissible for the limited purposes for which it was admitted in the instant case. We therefore find no abuse of discretion in the trial court's admission of this evidence.[5] (*McDowell*, *supra*, 54 Cal.4th at p. 426.)

Defendants also assert that if this issue is forfeited because trial defense counsel did not specifically articulate a due process objection, they received ineffective assistance of counsel. We have analyzed defendants' claims on the merits without considering them

---

[5] Defendants argue that the trial court abused its discretion in admitting the CSAAS evidence. However, they also state that the correct standard of review is de novo where the question presented is whether the trial court correctly construed the Evidence Code in admitting the evidence. Even under the de novo standard of review, our conclusion would remain the same.

forfeited, in part because the trial court granted defendants' pretrial motion that any defense objections concerning the admissibility of evidence "also be deemed objections under Article 1, Section[s] 7, 13, 15, and 16 of the California Constitution, and under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." Thus, defendants' ineffective assistance of counsel claim is inapplicable. However, even if defendants had not properly preserved this issue at the trial level, the failure to preserve this issue would not rise to the level of ineffective assistance of counsel. " ' " 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations]' " ' [Citations.]" (*People v. Johnson* (2016) 62 Cal.4th 600, 653.) Where, as here, an objection to evidence would have been properly overruled, defense counsel's failure to make such objection does not fall below an objective standard of reasonableness. (*People v. Peterson* (2020) 10 Cal.5th 409, 465 [counsel's performance was not deficient for failing to object where "any such objection would have been meritless and properly overruled"]; *People v. Bell* (2019) 7 Cal.5th 70, 127 (*Bell*) [counsel was not ineffective for "failing to raise a futile objection" to evidence].) Any objection to the CSAAS evidence grounded in due process concerns would have been properly overruled based on California Supreme Court precedent. Defendants' ineffective assistance of counsel claim therefore fails.

Finally, even if the trial court should have excluded the CSAAS evidence, defendants were not prejudiced by the evidence's admission. Johnson's daughter described specific sexual acts that defendants committed upon her, and the video and photographic evidence from defendants' cell phones corroborated that some of these acts occurred and generally bolstered Johnson's daughter's credibility. Johnson's daughter provided largely consistent accounts in three interviews with law enforcement and in her

12

testimony during trial. While the prosecutor discussed the CSAAS evidence in her closing argument, she did so in the context of asserting that the girl's behavior did not mean that her testimony was not credible, and she specifically reminded the jury of the limited purpose for which they could consider this evidence. The judge twice instructed the jury concerning the limited use for which the CSAAS evidence could be considered, and we presume the jury generally understands and follows instructions. (*People v. McKinnon* (2011) 52 Cal.4th 610, 670 (*McKinnon*).) Dr. Washington also testified that CSAAS does not establish that abuse actually occurred; it only helps to dispel any misconceptions about how victims of child sexual abuse might be expected to react. In this situation, even if the trial court improperly admitted the CSAAS evidence, and even if the admission amounted to a violation of defendants' due process rights, we find beyond a reasonable doubt that any error was harmless, and thus reversal is not warranted. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

### B. CSAAS Instruction – Both Defendants

Defendants contend that the trial court erred by using CALCRIM No. 1193 rather than CALJIC No. 10.64 to instruct the jury regarding the CSAAS evidence. Defendants argue that CALJIC No. 10.64 correctly instructs the jury that CSAAS research "begins with the assumption that a molestation has occurred, and seeks to describe and explain common reactions of children to that experience." In contrast, defendants argue, CALCRIM No. 1193 "does not inform the jurors that CSAAS assumes the truth of the complaining witnesses' claims. It fails to instruct the jury that the evidence is relevant only to educate the jurors about how molested children may act in general. Instead, it tells the jurors they may consider the evidence in 'evaluating [victims'] believability,' " which defendants assert improperly invites the jury to consider CSAAS evidence to support an alleged victim's allegations against a defendant. As a result, defendants assert that the trial court erred in using CALCRIM No. 1193, and that the alleged error deprived them of their due process right under the Fourteenth Amendment to the U.S. Constitution.

13

### 1. Legal Principles and Standard of Review

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.]" (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

"A jury instruction may ' "so infuse[ ] the trial with unfairness as to deny due process of law." ' [Citation.] However, ' "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is ' "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." ' " ' [Citation.] ' "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." ' [Citations.] ' "If the charge as a whole is ambiguous, the question is whether there is a ' "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " ' [Citation.]" (*People v. Lemcke* (2021) 11 Cal.5th 644, 655.)

### 2. Analysis

Defendants did not object to CALCRIM No. 1193 below. In fact, the trial court stated that the prosecutor and counsel for both defendants asked the trial court to provide CALCRIM No. 1193 before Dr. Washington's testimony. The trial court then asked counsel if they wished to add anything to this statement, and counsel for both defendants replied negatively. Then, at the conclusion of the presentation of evidence, defense counsel again did not object to the trial court's stated intent to give CALCRIM No. 1193 to the jury. Based on this, the Attorney General urges this court to apply the doctrine of invited error, barring defendants from raising this issue.

" 'When a defense attorney makes a "conscious, deliberate tactical choice" to [request or] forego a particular instruction, the invited error doctrine bars an argument on appeal that the instruction was [given or] omitted in error.' [Citations.]" (*McKinnon*, *supra*, 52 Cal.4th at p. 675, brackets in original.) "[T]he doctrine does not apply if

14

defendant merely acquiesced in the absence of an instruction. [Citation.]" (*Bell*, *supra*, 7 Cal.5th at p. 109.) For the doctrine to apply, " '[t]he record must reflect that counsel had a deliberate tactical purpose.' [Citations.]" (*Id.* at p. 109.) "Invited error will be found . . . only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction. [Citations.]" (*People v. Souza* (2012) 54 Cal.4th 90, 114.) "[T]he record must show only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it. If counsel was ignorant of the choice, or mistakenly believed the court was not giving it to him [or her], invited error will not be found. If, however, the record shows this conscious choice, it need not additionally show counsel correctly understood all the legal implications of the tactical choice. Error is invited if counsel made a conscious tactical choice." (*People v. Cooper* (1991) 53 Cal.3d 771, 831 (*Cooper*).) When the invited error doctrine applies, the defendant is barred from challenging the trial court's instruction on appeal. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 138.)

Here, defense counsel did not merely acquiesce to the trial court giving CALCRIM No. 1193. Instead, defense counsel affirmatively requested that the trial court provide this instruction before Dr. Washington testified. The record does not disclose any specific deliberate tactical purpose defense counsel had for requesting this instruction as opposed to CALJIC No. 10.64 or some other instruction regarding CSAAS. The trial court's summary did not disclose why defense counsel requested this instruction. However, defense counsel specifically requested the instruction. The trial court gave both defendants' counsel the opportunity to add anything to its summation and they declined. Although it appears that defense counsel may have made a "conscious choice" to ask the trial court to give CALCRIM No. 1193 (*Cooper*, *supra*, 53 Cal.3d at p. 831), we need not decide whether the invited error doctrine applies in this case. As we will explain, even if the doctrine of invited error does not bar defendants from raising this issue, we determine that the trial court did not err in giving CALCRIM No. 1193.

15

The trial court did not err in giving CALCRIM No. 1193 because it is not reasonably likely that jurors understood the instruction as permitting the use of CSAAS evidence for the improper purpose of proving that defendants sexually abused Johnson's daughter. CALCRIM No. 1193 informs jurors that they may use CSAAS evidence to evaluate whether the alleged victim's behavior, which may appear inconsistent with being molested, was actually not inconsistent with the behavior of a child sexual abuse victim. To the extent that CALCRIM No. 1193 allowed the jury to consider CSAAS evidence in their evaluation of the believability of Johnson's daughter's testimony, the instruction is proper. CSAAS evidence is relevant and admissible when an alleged victim's credibility has been attacked. (See *McAlpin*, *supra*, 53 Cal.3d at p. 1302 [CSAAS evidence would assist the trier of fact by providing the jury with information needed to objectively evaluate an alleged victim's credibility and was relevant because it tended to rehabilitate the testimony of a corroborating witness].) The jury could use the CSAAS evidence in evaluating whether Johnson's daughter's testimony was believable. The instruction specifically instructs the jurors that they must not consider CSAAS testimony as evidence that defendants committed the charged crimes. Thus, nothing about the language of CALCRIM No. 1193 supports defendants' argument that their due process rights were denied.

When combined with Dr. Washington's testimony emphasizing the limited role of CSAAS evidence, the instruction would not cause the jury to believe that they could consider the CSAAS evidence as proof that defendants sexually abused Johnson's daughter. As defendants acknowledge, the Court of Appeal in *People v. Gonzales* (2017) 16 Cal.App.5th 494 (*Gonzales*) rejected a similar argument to the one defendants raise here. In *Gonzales*, the court noted that CALCRIM No. 1193 "must be understood in the context" of the CSAAS expert's testimony, which in that case stressed that "CSAAS is not a tool to help diagnose whether a child has actually been abused." *(Gonzales*, *supra*, at p. 503.) In this context, the court held, a reasonable juror would understand

CALCRIM No. 1193 to mean that the jury could use the expert's testimony to conclude that the alleged victim's behavior "does not mean she lied when she said she was abused." (*Gonzales*, *supra*, at p. 504.) The court held that the jury would understand that it could not use the CSAAS expert's testimony to conclude that the alleged victim "was, in fact, molested." (*Ibid.*) The court concluded: "The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the alleged victim's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Ibid.*) Other courts have come to similar conclusions regarding CALCRIM No. 1193. (See *Lapenias, supra*, 67 Cal.App.5th at pp. 175–176; *Munch*, *supra*, 52 Cal.App.5th at pp. 473–474.) We agree with the reasoning in those cases. Because there is no reasonable likelihood that the jury misconstrued or misapplied the instruction in the matter asserted by defendants, the trial court did not err in instructing the jury on the use of CSAAS evidence with CALCRIM No. 1193, and defendants' due process rights were not denied.

In addition, even if the trial court erred in instructing the jury with CALCRIM No. 1193, any such error would not constitute reversible error. The repeated admonitions from the trial court to not use the testimony to determine whether abuse occurred, the prosecutor's reminders in her closing argument that the evidence could only be used for a limited purpose, and Dr. Washington's testimony that CSAAS does not determine whether abuse occurred all demonstrate the jury would not have improperly used the CSAAS evidence. The strong evidence against defendants, including the video and photographic evidence that corroborated some of Johnson's daughter's testimony, also supports the conclusion that defendants would have been convicted of the same offenses regardless of any alleged error in the instruction. Even if the trial court erred in using

17

CALCRIM No. 1193 and the error was of federal constitutional dimension, we find the error harmless beyond a reasonable doubt under *Chapman, supra*, 386 U.S. at p. 24.

### C. Defendant Taylor's Resentencing on Count 18

Taylor's presentencing report recommended a sentence for each of the 19 counts Taylor was convicted of, including a sentence of 15 years to life for count 18 (the final count of oral copulation or sexual penetration with a child 10 years of age or younger), with a total aggregate term of 290 years to life consecutive to three years in prison. At the sentencing hearing, the trial court orally imposed the recommended sentence for each of counts one through 17 and for count 20, along with the recommended aggregate term. However, the trial court did not orally pronounce a sentence for count 18. Clerk's minutes from the sentencing hearing reflect a sentence of 15 years to life imposed for count 18. Taylor contends, and the Attorney General concedes, that despite the notation in the clerk's minutes, remand is required to permit the trial court to resentence Taylor on count 18.

We agree that remand for resentencing is appropriate. The trial court must pronounce judgment in open court and on the record. (See § 1193, subd. (a).) "The trial court is generally required to include all aspects of a judgment in its oral pronouncement of judgment. [Citation.] Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error. [Citation.] The abstract of judgment 'does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize.' [Citation.]" (*People v. Leon* (2020) 8 Cal.5th 831, 855 (*Leon*).)

In the instant case, while the aggregate sentence the trial court imposed indicates the court intended to impose a consecutive sentence of 15 years to life for count 18, the trial court did not orally pronounce a sentence for count 18. Thus, the trial court did not include "all aspects" of its judgment in its oral pronouncement. (*Leon*, *supra*, 8 Cal.5th at p. 855.) The clerk's minutes do not substitute for the lack of an oral pronouncement on

18

count 18, as this document may not add to or modify the court's oral pronouncement of judgment. Therefore, we will remand this matter for resentencing.

### D. Cruel and Unusual Punishment – Defendant Taylor

Taylor asserts that his sentence of 290 years to life consecutive to three years in prison amounts to cruel and/or unusual punishment under the state and federal Constitutions because it serves no legitimate penal purpose. He argues that he "has effectively received a sentence of life without parole, since he has no chance of ever being released on parole." He further argues that such a sentence does not further any of the goals of California's penal system: to punish a convicted defendant for the harm caused, to deter future criminality, or to protect society. The Attorney General asserts that Taylor's sentence is not grossly disproportionate to his crimes and thus it does not constitute cruel and/or unusual punishment.

"[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant. [Citations.]" (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425.) Because we will remand this matter for resentencing due to the lack of a pronouncement of the sentence for count 18, the trial court may revisit all prior sentencing decisions. Thus, it is premature to address Taylor's argument that his sentence constitutes cruel and/or unusual punishment.

### E. Criminal Justice Administration Fee – Both Defendants

The trial court imposed a $129.75 criminal justice administration fee upon both Taylor and Johnson, pursuant to Government Code sections 29550, 29550.1, and 29550.2. Following defendants' judgment, Government Code section 6111 was amended to provide: "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to . . . subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a), as amended by Stats. 2020, ch. 92, § 11.) In other words, "by its plain

19

terms," Government Code section 6111 "make[s] any unpaid portion of the identified assessments, as they existed on June 30, 2021, 'unenforceable and uncollectible' as of July 1, 2021. [Citation.]" (*People v. Greeley* (2021) 70 Cal.App.5th 609, 626.) Further, "the statute *also* mandates that any portion of a judgment imposing those fees be vacated. Accordingly, based on the plain language of the statute, the unpaid balance of the . . . criminal justice administration fees must be vacated." (*Id.* at pp. 626–627, fns. omitted.) The Attorney General concedes that both defendants are entitled to vacation of the unpaid balance of this fee. Therefore, we will direct vacation of the unpaid balance of the criminal justice administration fee for both defendants.

### F. Defendant Taylor's Abstract of Judgment

The trial court sentenced Taylor to consecutive terms of 15 years to life for each of counts three through 17. The abstract of judgment form contains a section for the court to list any counts for which the defendant is sentenced to a term of 15 years to life. This section of Taylor's abstract of judgment merely contains an asterisk instead of listing the counts the 15-years-to-life sentence applied to. Taylor's abstract of judgment does not explain what the asterisk refers to. Nowhere does Taylor's abstract state that the 15-years-to-life sentence was imposed for each of counts three through 17. Taylor therefore requests correction of the abstract of judgment to reflect that he received a sentence of 15 years to life for each of these counts.[6]

In addition, the trial court imposed various fines and fees on Taylor, but it then stayed those fines and fees based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Taylor's abstract of judgment states: "FINE/FEE STAYED P[E]R

---

[6] Taylor's brief states "the abstract should be amended to indicate that [Taylor] received a sentence of 15 years to life for each of counts seven through 17." However, the court imposed the 15-years-to-life sentence for each of counts three through 17, not seven through 17, and the abstract of judgment does not annotate the sentence for any of these counts. We therefore treat Taylor's argument as covering counts three through 17, as the Attorney General suggests.

20

DUENAS." It does not specifically list which fine(s) and/or fee(s) were stayed. Taylor thus contends that reference to a state restitution fine, a court operations assessment, and a criminal conviction assessment imposed by the trial court "should be stricken from the abstract of judgment." The Attorney General agrees that the abstract does not clearly indicate that all fines and fees imposed by the court were stayed, and therefore the abstract should be amended. The Attorney General does not address Taylor's contention that the applicable fines and fees be "stricken" from the abstract, but instead asserts that the abstract should be amended "to clearly state that the challenged fines and fees were imposed and stayed."

" 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citation.]' . . . Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts. [Citations.]" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

We agree with the parties that the abstract of judgment fails to reflect that the trial court sentenced Taylor to consecutive terms of 15 years to life for each of counts three through 17. Upon resentencing, the abstract will need to reflect the sentence the court imposes for each of counts three through 17. The abstract will also need to reflect the sentence the trial court imposes for count 18. We also agree that the abstract does not clearly reflect which imposed fines and fees the trial court stayed. Taylor cites no authority for the proposition that the fines and fees should be ordered "stricken" from the abstract when those fines and fees have been stayed. On remand for resentencing in Taylor's case, the trial court will have the opportunity to ensure that the new abstract of judgment is a complete and accurate recitation of the oral pronouncement of judgment.

21

### *G. Penal Code 654's Applicability to Defendant Johnson*

The probation officer's presentencing report advised that section 654 did not prohibit Johnson from being punished for each of the counts for which she was found guilty. The report stated: "Based on the information provided by the [prosecutor], Count 18 occurred on separate occasion and Counts 15, 16, 17, and 20 occurred on the same occasion. Given counts 15, 16, and 17 can be viewed as the same occasion and subject to concurrent sentencing, the undersigned believes each had separate objectives and were predominantly independent of each other . . . ." In her sentencing memorandum, Johnson noted the probation officer's statements regarding section 654, but she did not specifically contend that section 654 applied to bar her punishment on one or more counts. In a supplemental sentencing memorandum, Johnson did not raise the section 654 issue. The prosecutor's sentencing memorandum asserted that section 654 does not require punishment to be stayed for any of Johnson's counts. The prosecutor's memorandum asserted Johnson committed "[t]hree separate and distinct actions" on the night where she and Taylor videorecorded their abuse of Johnson's daughter, discussing three sexual acts the video and images depicted between Johnson and her daughter. The prosecutor's memorandum noted that Johnson's daughter then slept for a period of time, woke to find defendants engaging in sexual intercourse in the bed next to her, and fell asleep again before "[h]ours later, her mother, Defendant Johnson, woke her again" and again engaged in a sexual act with her daughter. The prosecutor's memorandum continued: "The night on video with Defendant Johnson, she changed positions. Changing body positions[ ] allowed time to stop the assaultive behavior, which Defendant Johnson did not do. That night there was even a break for a few hours before Defendant Johnson sexually assaulted her daughter again."

At sentencing, Johnson briefly raised the section 654 issue, arguing: "The law is quite clear in 654 that if it happens at the same time, it should be considered one offense. It should be sentenced for one offense, not for four different 15 years to life." The

prosecutor argued that Johnson's daughter had not only testified about Johnson's actions on the night of the videorecording and photographing, but also about another time when Johnson "sexually assaulted her and touched her," and when the girl told Johnson she did not like it, Johnson responded by taking away her daughter's phone. The prosecutor then discussed Johnson's actions during the night of the videorecording and photographing, arguing that Johnson had an opportunity to reflect and stop her actions in between each act, including the last act that occurred after Johnson's daughter went to sleep for a few hours. The prosecutor concluded her argument on this issue as follows: "In my closing argument in this trial, I told the jury that they have before them more than four counts. They have possibly five. The time the phone was taken away -- the three -- before the individuals -- or the defendants had sex. And then the fifth after." [¶] The four charged were representative of at least four separate and distinct acts done by Defendant Johnson to her biological daughter."

The trial court ruled that section 654 did not apply to limit punishment on any of the counts of which Johnson was convicted. The trial court ruled that Johnson's actions "involved more than a single act or course of conduct," and it found "that the course of conduct that would be the separate acts of sexual abuse reflect multiple intents and objectives."

Johnson contends that the trial court erred in refusing to apply section 654 to stay her sentences on counts 16 through 18. She argues that the acts that formed the basis for counts 15 through 17 "were carried out in the same location, on the same night, in relatively quick temporal succession, incident to the same general intent: apparently, an intent to produce video of the acts." Johnson further asserts the prosecutor gave contradictory accounts of the factual basis for count 18, arguing to the jury that Johnson was guilty of this count based on her actions that occurred the same night of the conduct charged in counts 15 through 17 and then arguing at the sentencing hearing that count 18 was based on Johnson's actions on a different date where Johnson took away her

23

daughter's phone. She argues that "the prosecutor's attempt to suggest that Count 18 was based on conduct that had never been asserted to be the basis of that conviction previously called for close scrutiny, and that claim should not stand up on appeal." Johnson thus concludes that she should only be punished for one of these four counts – count 15 – and that the punishment for counts 16 through 18 should be stayed under section 654. The Attorney General counters that the trial court properly refused to stay Johnson's sentence on counts 16 through 18 pursuant to section 654.

### 1. Legal Principles and Standard of Review

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. [Citation.]" (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence. [Citation.]" (*People v. Brents* (2012) 53 Cal.4th 599, 618.) When the facts are undisputed, however, "the application of section 654 raises a question of law we review de novo. [Citations.]" (*People v. Corpening* (2016) 2 Cal.5th 307, 312 (*Corpening*).)

Section 654, subdivision (a), states in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."[7] "The statutory purpose underlying section 654 'is to ensure that a defendant's punishment will be commensurate with his [or her] culpability.' [Citation.]

---

[7] Section 654 was amended after Johnson's trial with an effective date of January 1, 2022. (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.) "Previously, under section 654 'the sentencing court was required to impose the sentence that "provides for the longest potential term of imprisonment" and stay execution of the other term. [Citation.] . . . [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence.' [Citation.]" (*People v. Jones* (2022) 79 Cal.App.5th 37, 45.)

To that end, the statute prohibits courts from imposing multiple punishment for the same act or omission but, as the California Supreme Court recently observed, the application of section 654 can leave courts with more questions than answers. [Citation.] This is because '[n]either the text nor structure of section 654 resolves when exactly a single act begins or ends, for example, or how to take account of the fact that virtually any given physical action may, in principle, be divided into multiple subsets that each fit the colloquial definition of an "act." ' [Citation.]" (*People v. Kelly* (2018) 28 Cal.App.5th 886, 904.)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives. [Citations.]" (*Corpening*, *supra*, 2 Cal.5th at p. 311.)

For step one of the section 654 analysis, "[w]hether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses. [Citations.]" (*Corpening*, *supra*, 2 Cal.5th at p. 313.) For step two of the analysis, "[a] defendant may be punished multiple times for the same act without violating section 654 under specific circumstances. For example, if there are multiple victims [citation], if the act is committed with different criminal objectives [citation], or if a series of acts are committed within a period of time during which reflection was possible [citation], section 654 does not apply." (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1136.) "It is defendant's intent and objective, not

25

the temporal proximity of his [or her] offenses, which determine whether the transaction is indivisible. [Citations.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) "We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he [or she] may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*Ibid.*)

In *Harrison*, the California Supreme Court held that section 654 did not prohibit multiple punishments for a defendant who committed three acts of forcible sexual penetration within a period of seven to 10 minutes. (*Harrison*, *supra*, 48 Cal.3d at pp. 325–326, 338.) The court held that multiple punishments were not prohibited merely because the defendant directed the three acts toward the same area of the victim's body, or because the defendant's actions would have constituted one forcible penetration but for the victim's acts of resisting. (*Id.* at pp. 337–338.) The court continued: "Moreover, there is no legal or logical bar to separate punishment where, as here, *each of defendant's 'repenetrations' was clearly volitional, criminal and occasioned by separate acts of force.* Defendant urges that no greater punishment should befall him simply because the initial offense was interrupted by the victim's struggle. By the same token, however, defendant should also not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his sexually assaultive behavior." (*Id.* at p. 338.) Likewise, in *People v. Perez* (1979) 23 Cal.3d 545, 553 (*Perez*), our Supreme Court held: "A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his [or her] victim is substantially more culpable than a defendant who commits only one such act. We

therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act." Thus, the court found that where the defendant committed various forcible sexual acts on the victim in a period of 45 minutes to an hour: "None of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other. We therefore conclude that section 654 does not preclude punishment for each of the sex offenses committed by defendant." (*Id.* at pp. 549, 553–554.)

### 2. Analysis

We hold, consistent with our Supreme Court under analogous circumstances in *Harrison* and *Perez*, that section 654 does not restrict Johnson from being punished for each of her acts of oral copulation or sexual penetration with the child. This holding applies regardless of whether the trial court based its decision on actions in count 18 that occurred on the same night as those in counts 15 through 17 or on actions that occurred on a different occasion. If the factual basis for count 18 involved Johnson's actions on the night of the videorecorded and photographed conduct, section 654 does not apply. Johnson's daughter provided information about at least four distinct sexual acts that Johnson engaged in with her on the night in question, some of which occurred before the girl fell asleep and at least one of which occurred after she was awakened hours later. Johnson does not dispute that these four counts represent four different physical acts of oral copulation or sexual penetration, and each of these actions represented its own distinct actus reus. Thus, the first part of the section 654 analysis is satisfied. As to part two of the analysis, while Johnson argues that the acts were carried out "at the same time, in the same location, and with the same intent," the record reveals that "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other," and thus section 654 does not preclude punishment for each of Johnson's acts of child sexual abuse.

27

(*Perez*, *supra*, 23 Cal.3d at pp. 553–554.) Each act by Johnson reflected its own volition, its own criminal intent, and its own act of child sexual abuse, with time to reflect in between each act, including during the time her daughter was asleep. Instead of taking advantage of an opportunity to walk away from the victim, Johnson voluntarily resumed her sexually abusive behavior. Johnson's repeated acts of child sexual abuse during this time reflect substantially more culpability than a defendant who commits only one such act. Thus, section 654 does not limit her punishment for counts 15 through 18.

Johnson argues in her reply brief that "there was but a single intent and no movement to any different location here," and thus section 654 would apply if all the actions in counts 15 through 18 occurred on the same night. We reject Johnson's argument that a "single intent" was involved. The California Supreme Court rejected a similar argument to the one Johnson makes here in *Perez,* holding that the defendant's argument that his "sole intent and objective was to obtain sexual gratification" for each count was "much too broad and amorphous to determine the applicability of section 654." (*Perez*, *supra*, 23 Cal.3d at p. 552.) The court stated: "Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his [or her] culpability. [Citation.] It would reward the defendant who has the greater criminal ambition with a lesser punishment." (*Ibid.*) Each of Johnson's acts of child sexual abuse was occasioned by its own criminal intent to achieve another instance of sexual gratification. The cases Johnson cites for the proposition that she had a single intent in her actions are inapposite. (See *People v. Islas* (2012) 210 Cal.App.4th 116, 129–130 [section 654 applied where the defendants were convicted of burglary and false imprisonment and "the burglary conviction was based entirely on entry with the intent to commit felony false imprisonment"]; *People v.*

*Latimer* (1993) 5 Cal.4th 1203, 1216 [multiple punishment for rape and kidnapping was prohibited under section 654 because the kidnapping was committed for the purpose of committing the rape]; *People v. Martinez* (1980) 109 Cal.App.3d 851, 858 [section 654 prohibited multiple punishment where assault with intent to commit rape and false imprisonment offenses involved "the same criminal event" of the defendant assaulting his victim and holding her "for a few moments to attempt to convince her not to complain to the police."].)

Thus, if the factual basis for count 18 was Johnson's actions on the same night as her conduct in counts 15 through 17, section 654 would not apply. If the factual basis for count 18 was Johnson's actions on a different occasion, the separation in time would only further demonstrate that section 654 does not apply.

Johnson argues that the prosecutor supplied contrasting positions as to the factual basis for count 18. Thus, Johnson asserts that at a minimum, "the sentence on Count 18 must be stayed under section 654 as it is not clear what factual determinations the jury can have possibly made about that count that would distinguish it from conduct punished in the other three counts, and, in fact, the prosecutor's suggestions in the sentencing hearing about the factual basis for this count had never actually been argued to the jury." This argument does not warrant application of section 654. As we state above, even assuming that the jury concluded that Johnson's conduct in count 18 occurred on the same night as the actions in counts 15 through 17, section 654 does not warrant relief for the reasons stated above. Thus, the trial court had a sufficient factual basis to conclude that section 654 did not apply. If the trial court did conclude that the factual basis for count 18 involved a different occasion, the trial court did not err in this respect. Johnson's daughter testified about a different date when both defendants took her to a hotel in what she believed was San Francisco and engaged in sexual acts including oral copulation with her, which would supply a factual basis for such a finding by the trial court.

29

Johnson cites *People v. Siko* (1988) 45 Cal.3d 820 in support of her argument that the trial court should not have considered the prosecutor's argument that count 18 involved Johnson's actions on a different occasion. In *Siko*, the California Supreme Court held that the defendant "committed two criminal acts, but was convicted of three violations: rape, sodomy, and lewd conduct with a child," and therefore he should not have been punished separately for all three convictions. (*Id.* at p. 823.) The court rejected the Attorney General's argument that the defendant committed one or more lewd acts other than the rape and sodomy, stating: "There is no showing that the lewd-conduct count was understood in this fashion at trial. Indeed, a review of the record demonstrates the contrary." (*Id.* at pp. 825–826.) The court based this position on the fact that "the jury's lewd-conduct verdict included a specific finding" that the lewd conduct that formed the basis for the defendant's conviction was, in fact, the rape and sodomy. (*Id.* at p. 826.)

As we have concluded, section 654 does not restrict Johnson from being punished for each of her acts of oral copulation or sexual penetration with the child even if the factual basis for all four counts involved the same night. *Siko* merely held that section 654 applied because defendant did not commit lewd acts other than the charged rape and sodomy. Here, regardless of the prosecutor's statements in the sentencing hearing, the evidence demonstrates that Johnson committed at least four acts on the same night that formed the basis for the verdicts in counts 15 through 18. Based on this evidence, section 654 does not apply. Any error by the prosecutor in characterizing the factual basis for count 18 does not alter the conclusion that section 654 does not apply to Johnson.

Johnson committed her crimes through distinct physical acts, reflecting multiple intents and objectives. Section 654 does not limit her punishment. (*Corpening*, *supra*, 2 Cal.5th at p. 311.)

## H. Amendments to Section 1170

Finally, Johnson argues that because the trial court imposed the three-year aggravated term for count 20, resentencing is warranted for the trial court to consider the impact of two recent amendments to section 1170 on her case. First, Johnson asserts that remand is required under changes to section 1170 that now make the middle term the presumptive sentence unless certain circumstances exist. Second, Johnson contends that her case must be remanded for resentencing under amendments to section 1170 that require the trial court to impose the low term if the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, subject to a weighing of the aggravating and mitigating circumstances. The Attorney General concedes that both changes, which took effect while this appeal was pending, apply retroactively to Johnson. However, the Attorney General asserts that Johnson is not entitled to remand for resentencing under either provision.

### 1. Legal Principles and Standard of Review

While this appeal was pending, the Governor signed Senate Bill No. 567 (Stats. 2021) (Senate Bill 567), which amended section 1170 and became effective on January 1, 2022. "Pursuant to Senate Bill No. 567, section 1170, subdivision (b) has been amended to make the middle term the presumptive sentence for a term of imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless 'there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' [Citation.]" (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464 (*Lopez*).) Senate Bill 567's amendments to section 1170, subdivision (b), are ameliorative in nature and "apply retroactively to all cases not yet final as of January 1, 2022. [Citation.]" (*Lopez*, *supra*, at p. 465.)

The Courts of Appeal are currently split regarding the applicable standard for determining whether there is harmless error when a defendant was sentenced under the former version of section 1170, subdivision (b), and the amended version applies retroactively. (See, e.g., *People v. Flores* (2022) 75 Cal.App.5th 495, 500–501 [reviewing court must find beyond a reasonable doubt that the jury would have found beyond a reasonable doubt at least one aggravating circumstance true]; *Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11 [harmless error if "reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term"]; *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982 [reviewing court "must ask both whether we can be certain the jury would have found beyond a reasonable doubt the aggravating circumstances relied on by the court *and* whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term"]; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112 [reviewing court must first determine beyond a reasonable doubt that "the jury would have found true at least one of the aggravating circumstances that the trial court relied on," and then whether, if the trial court relied on other aggravating circumstances, "it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error."].)

Following Johnson's sentencing, the Legislature also amended section 1170 by adding subdivision (b)(6). This subdivision states that notwithstanding the change making the middle term the presumptive sentence, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if, in relevant part, it finds that "a contributing factor in the commission of the offense" was that "[t]he person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation,

32

or sexual violence." (§ 1170, subd. (b)(6), (b)(6)(A), as amended by Stats. 2021, ch. 731, § 1.3.) This change likewise "applies retroactively to nonfinal cases on direct appeal. [Citations.]" (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095 (*Gerson*).) Where a defendant falls within the amended statute following his or her sentencing, remand for resentencing is required " 'unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' [Citation.] This is because defendants are ' "entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' [Citation.]" (*Id.* at p. 1096; see also *People v. Salazar* (2022) 80 Cal.App.5th 453, 462–463, review granted Oct. 12, 2022, S275788; *People v. Banner* (2022) 77 Cal.App.5th 226, 242.)

### 2. Analysis

We conclude that remand is not warranted under either of the recent changes to section 1170 Johnson cites. As to Johnson's first issue, we need not decide which standard applies in determining whether there is harmless error concerning Johnson's sentencing under the former version of section 1170, subdivision (b), because we conclude that all the aggravating factors relied on by the trial court for count 20 would have been found true beyond a reasonable doubt by the jury and the trial court would not have chosen a lesser sentence than the one it imposed. Accordingly, under any of the standards set forth above, the error was harmless. Regarding Johnson's second issue concerning section 1170, subdivision (b)(6), while the trial court was presented with evidence of Johnson's past trauma, we conclude that the record clearly indicates that the trial court would have imposed the same sentence even if it had been aware of its discretion later specified by the legislative amendments to this section.

As to the first matter, the trial court concluded in imposing the upper-term sentence for both defendants that defendants' crimes "involved great violence, great bodily harm, dread of great bodily harm, or other acts disclosing high degree of cruelty,

33

viciousness, or callousness." The evidence in the record establishes these aggravating factors beyond a reasonable doubt. The jury heard Johnson's daughter's testimony about her mother's role in the sexual abuse, including Johnson's role in preserving the abuse on video and in photographs. A phone found in Johnson's purse contained photos capturing this sexual abuse. The jury heard testimony about how Johnson not only stood by passively as Taylor sexually abused Johnson's daughter, but how Johnson actively took part in creating, possessing, and controlling matter depicting her daughter engaging in sexual conduct. The girl convincingly testified about the violence, bodily harm, and dread that Johnson's actions inflicted upon her, and the high degree of cruelty, viciousness, or callousness involved in Johnson's actions. When the prosecutor showed the girl two photos of the sexual abuse to identify the adults depicted in the photos, the girl demonstrated the trauma inflicted upon her by expressing dread of seeing the photos.

As the trial court stated in sentencing Johnson: "[A]s the victim's biological mother, at a minimum, it was expected that she would protect the victim from any harm. Not only did she not protect, she was an active and ongoing participant in the sexual abuse with her acts and words. [¶] She turned her child into nothing more than a sexual device with no sense of concern for the victim's emotional and physical well-being. It should also be noted that the defendant participated in the recordings of some of these incidences and retained images. [¶] The victim was particularly vulnerable. The victim in this case was 9 years old and was subjected to control and sexual abuse of Defendant Taylor and Defendant Johnson. This Court can, frankly, not think of any instance where a victim could have been more vulnerable than what was reflected in this trial." The trial court also noted that the record reflects that Johnson and Taylor both "initiated and induced each other" to sexually abuse Johnson's daughter. Johnson did not merely possess and control matter depicting her daughter engaging in sexual conduct; she sexually abused her daughter to create this material. The jury heard evidence about how Johnson tried to normalize this behavior, telling her daughter that it was "totally normal"

34

and asking her daughter to come "have fun" with her and Taylor. When Johnson's daughter expressed displeasure at the abuse, the jury heard, Johnson responded by taking away her daughter's phone and grounding her.

On this record, we conclude beyond a reasonable doubt that all the aggravating factors would have been found true beyond a reasonable doubt by the jury and that the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term. Accordingly, under any prejudice standard the trial court's failure to apply later-amended section 1170, subdivision (b), was harmless.

As to the second matter, we conclude that the record clearly indicates the trial court would have imposed the same sentence had it been aware of its responsibility to make the determination section 1170, subdivision (b)(6), now requires. The trial court was aware that Johnson reported several acts of psychological, physical, or childhood trauma, as noted in the presentencing report. The trial court addressed these issues before sentencing Johnson, stating: "The Court has considered these relevant factors offered on behalf of Defendant Johnson, including indications of a troubled childhood, sexual abuse, abuse of drugs, and potential or current mental health challenges. However, none of these issues explain in any way or qualify the level of depravity shown in this case." Thus, the record suggests that the trial court rejected the notion that Johnson's reported childhood trauma was a contributing factor in the commission of her offense in count 20. However, even assuming that Johnson could demonstrate that her reported childhood trauma was a contributing factor in the commission of her offense, the record clearly indicates that the trial court would have found that the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice, and thus the court would not have ordered imposition of the lower term. As noted above, the trial court listed several aggravating factors that it found applied to Johnson. The trial court also found that Johnson "engaged in violent

35

conduct which indicates a serious danger to society," demonstrating that the trial court would have found that imposing the lower term for count 20 would have been contrary to the interests of justice. The trial court also noted that the only factor in mitigation was that Johnson did not have a prior criminal record. However, the trial court stated that "any weight given to this factor is outweighed by all the other factors mentioned previously in aggr[av]ation." This further demonstrates that the court would have found that the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. Therefore, remand is not warranted because the record "clearly indicate[s]" that the trial court would not have imposed the lower term even if it had been aware of the later changes to section 1170, subdivision (b)(6). (*Gerson*, *supra*, 80 Cal.App.5th at p. 1096.)

## I. *Conclusion*

We find no abuse of discretion in the trial court's admission of the CSAAS evidence, and the trial court did not err in instructing the jury on the use of CSAAS evidence with CALCRIM No. 1193. We accept the Attorney General's concessions that: (1) remand for resentencing in Taylor's case is required due to the lack of an oral pronouncement of a sentence on count 18; (2) vacation of the unpaid balance of the criminal justice administration fee is warranted for both defendants; and (3) the abstract of judgment fails to reflect the trial court's sentence for Taylor on each of counts three through 17, and that the trial court stayed the imposed fines and fees. Because we remand Taylor's case for resentencing, we do not address whether Taylor's sentence constitutes cruel and/or unusual punishment.

As for Johnson, she committed her crimes through distinct physical acts, reflecting multiple intents and objectives, and section 654 does not limit her punishment. Remand for resentencing on count 20 is not warranted under recent changes to section 1170 that apply retroactively.

36

## IV. DISPOSITION

For defendant Johnson, the portion of the $129.75 criminal justice administration fee that remained unpaid as of July 1, 2021, is vacated. The clerk of the superior court is directed to amend the abstract of judgment to reflect the vacatur of any balance of the criminal justice administration fee that remained unpaid as of July 1, 2021. The clerk shall forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. As amended, the judgment for defendant Johnson is affirmed.

For defendant Taylor, the judgment is reversed and the matter is remanded to the trial court for resentencing. At resentencing, the trial court shall pronounce a sentence for count 18, and the trial court may revisit all prior sentencing decisions. The trial court shall also vacate the portion of the $129.75 criminal justice administration fee that remained unpaid as of July 1, 2021. Upon resentencing defendant Taylor, the trial court shall ensure that the new abstract of judgment accurately and completely reflects the oral pronouncement of judgment, including the sentence for each count and any fines and fees imposed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

BROMBERG, J.

*People v. Taylor et al.*
**H048959**